UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RACHEL LYNN DAVIS,**

     **Plaintiff,**

-vs-                Case No.  8:12-cv-2811-FtM-EAK-DNF

**CAROLYN W. COLVIN,** Acting
**Commissioner of Social Security**[1]**,**

     **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

  Plaintiff, Rachel Lynn Davis, seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income ("SSI")[2].  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED**, pursuant to § 205(g) of the Social Security Act, 42 U.S.C § 405(g).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted, therefore, for Commissioner Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section §205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

I.      **Social Security Act Eligibility, Procedural History, and Standard of Review**

The law defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d) (2); 20 C.F.R. §§ 404.1505-404.1511.

   A.     **Procedural History**

On June 17, 2009, Plaintiff filed an Application for SSI, alleging a disability onset date of December 1, 2008. (Tr. 23).  Plaintiff's request for benefits was denied on September 28, 2009, and upon reconsideration on November 23, 2009. (Tr. 19). An administrative hearing was held before Administrative Law Judge Glen H. Watkins (the "ALJ") on February 7, 2011. (Tr. 41). An impartial Vocational Expert ("VE") Randolph J. Salmons appeared and testified at the hearing.  On March 11, 2011, the ALJ rendered his decision, in which he determined that Plaintiff was not disabled within the meaning of the Social Security Act since June 17, 2009, the date the application was filed. (Tr. 36).  Plaintiff's Request for Review was denied by the Appeals Council on October 4, 2012. (Tr. 2-4).  Plaintiff brought the instant suit on December 13, 2012.

   B.     **Summary of ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Commissioner of Social Security*, ___ Fed. App'x. ____, 2013 WL 5788574 (11th Cir. Oct. 29, 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228

(11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 Fed. App'x. 913, 915 n.2 (11th Cir. 2013).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 17, 2009. (Tr. 25). At step two, the ALJ determined that Plaintiff has the following severe impairments: (1) diabetes mellitus, (2) neuropathy, (3) hypertension, (4) non ischemic cardiomyopathy status post implantable cardioverter defibrillator (ICD), (5) obesity, and (6) sleep apnea. (Tr. 25). The ALJ made this finding after reviewing the medical evidence in the record. (Tr. 25). The ALJ found that the foregoing impairments impose more than minimal functional restrictions on the Plaintiff's ability to perform the basic requirements of work. (Tr. 22).

At step three, the ALJ found that Plaintiff did not suffer from an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (Tr. 31). Before proceeding step four, the ALJ considered Plaintiff's entire medical record and found that she has the following residual functional capacity ("RFC"):

> the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work. The claimant has the ability to stand and or walk two hours during an eight-hour day, and sit for six hours during an eight-hour day with normal breaks. However, the claimant requires a sit/stand option. The claimant can occasionally perform all postural activities including climbing of ramps, stairs, balancing, stooping, kneeling, and crawling. The claimant should never climb ladders, ropes or scaffolds.

> She should avoid concentrated exposures to fumes, odors, gases, hazards, extreme cold and extreme heat.

(Tr. 31). Based on this RFC, at step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (Tr. 34). At step five, the ALJ considered Plaintiff's age, education and work experience and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 35). Relying on the testimony of a VE the ALJ found that Plaintiff could work the jobs of reservationist (DOT 238.367-038) and non-emergency dispatcher (DOT 239.367-022). (Tr. 35). Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined by the Social Security Act, since June 17, 2009, the date the application was filed. (Tr. 36).

### C. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

## II. Specific Issues and Conclusions of Law

Plaintiff raises three issues on appeal. (Doc. 17 p.1). As stated by Plaintiff, they are: (1) the ALJ's residual functional capacity determination is unsupported by substantial evidence because the ALJ erred in weighing and evaluating the medical evidence of record; (2) the ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in analyzing the required factors when assessing Plaintiff's credibility; and (3) the ALJ's Step 5 determination is unsupported by substantial evidence because the ALJ relied upon an incomplete hypothetical question asked to the VE. (Doc. 17 p. 1). The Court will address each issue in turn.

### a) Whether the ALJ's RFC determination is unsupported by substantial evidence because the ALJ erred in weighing and evaluating the medical evidence of record

#### i) Dr. Thomas DiGeronimo

Plaintiff argues that the ALJ erred in according "little weight" to the opinion of Plaintiff's treating neurologist, Dr. Thomas DiGeronimo. (Doc. 17 p. 16). According to Plaintiff, Dr. DiGeronimo's opinion was supported by his extensive treatment of Plaintiff as well as the medical evidence of record. (Doc. 17 p. 16). Therefore, Plaintiff argues, Dr. DiGeronimo's opinion was entitled to controlling, or at least great, weight. (Doc. 17 p. 16).

Defendant responds that the ALJ accorded little weight to Dr. DiGeronimo's opinion because Dr. DiGeronimo's opinion was inconsistent with his own examination findings and the other evidence of record. (Doc. 18 p. 6). For this reason, Defendant contends, substantial

evidence supports the ALJ's decision to give little weight to Dr. DiGeronimo's opinion. (Doc. 18 p. 8).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physician and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips,* 357 F.3d at 1240. "Good cause" exists when the: "(1) treating physicians' opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997)).

In this case, the ALJ noted that Dr. DiGeronimo, Plaintiff's neurologist and treating physician, opined on February 21, 2011, that Plaintiff could not work a full eight hour workday (Tr. 33). The ALJ addressed this opinion and chose to accord it little weight. (Tr. 33-34). The ALJ explained that his decision was based upon inconsistencies between Dr. DiGeronimo's findings as to Plaintiff's RFC and Dr. DiGeronimo's findings during multiple physical

examinations. For example, the ALJ noted that on December 14, 2009, Dr. DiGeronimo reported that a physical examination of Plaintiff's neck and upper extremities revealed a full range of motion with no spasms or trigger points. (Tr. 34-35). The ALJ also noted during this examination that Plaintiff demonstrated a full range of motion of her back with no spasms or trigger point, had intact balance, and walked freely without the use of an assistive device. (Tr. 34). The ALJ noted that a followup evaluations by Dr. DiGeronimo on May 18, 2010, and June 21, 2010, revealed that Plaintiff was essentially the same. (Tr. 34).

Additionally, the ALJ noted that Dr. DiGeronimo's opinion was not supported by other examining physician's findings. Specifically, the ALJ noted that Plaintiff's medical records show that on June 17, 2010, during an evaluation with Dr. Ayercole of Central Tampa Hematology and Oncology, Plaintiff was described as alert and oriented, and that she demonstrated normal posture and motor behavior. (Tr. 34). Further, Plaintiff's cardiovascular examination was normal and her musculoskeletal examination was normal with no redness, swelling, tenderness or deformities. (Tr. 34). Dr. Ayercole also reported that Plaintiff had normal range of motion. (Tr. 34). Ultimately, the ALJ concluded, the medical evidence as a whole failed to substantiate Dr. DiGeronimo's opinion. (Tr. 34).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 357 F.3d at 1241. Here, the ALJ specifically articulated several reasons for giving Dr. DiGeronimo's opinion "little weight." Substantial evidence supports the ALJ's determination, and therefore, the Court finds that the ALJ did not err in according Dr. DiGeronimo's opinion "little weight."

### ii) Glen Turner, ARNP

Plaintiff argues that the ALJ erred in evaluating the opinion of nurse practitioner Glen Turner, ARNP. (Doc. 17 p. 20). Citing SSR 09-03p, Plaintiff argues that the ALJ was required to explain the weight he gave to Mr. Turner's opinion, even though as a nurse practitioner, Mr. Turner was not an acceptable medical source. (Doc. 17 p. 20). Plaintiff contends that Mr. Turner's opinion should be entitled to great weight given Plaintiff's treatment history with Mr. Turner. Additionally, Plaintiff argues, great weight should be accorded Mr. Turner's opinion because it is supported by Mr. Turner's own examinations of Plaintiff as well as the medical evidence of record. (Doc. 17 p. 21-22).

Defendant argues that the ALJ considered Mr. Turner's opinion and properly noted that as a nurse practitioner, Mr. Turner was not an acceptable medical source. (Doc. 18 p. 9). Further, Defendant argues, because Mr. Turner was not an acceptable medical source, his opinions were not "medical opinions" and were not entitled to any special significance or consideration. (Doc. 18 p. 9). Additionally, Defendant argues, although the ALJ was not required to articulate specific reasons for discounting Mr. Turner's opinion, the ALJ nevertheless noted Mr. Turner's opinion is not consistent with the findings made during clinical examination and not consistent with the findings throughout the evidence. (Doc. 18 p. 9).

"A medical opinion from a nurse practitioner is not an 'acceptable medical source' under statute, but is an 'other source' which may be considered by the ALJ." *Owens v. Barnhart,* 2006 WL 4791709, at *3 (M.D. Fla. Aug. 16, 2006) (citing 20 C.F.R. § 404.1513). The opinion of an "other source" cannot establish the existence of an impairment. *Id.* "However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to

function." SSR 06-03p.  "Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.*

In this case, the ALJ did not commit reversible error in evaluating Mr. Turner's opinion of Plaintiff's RFC.  As Defendant correctly argues, Mr. Turner was not an acceptable medical source and his opinion is not entitled to any special significance or consideration.  *See* 20 C.F.R. §§ 404.1513; 416.913(a); 416.927(a)(2).  In his opinion, the ALJ specifically considered the opinion of Mr. Turner and noted that such an opinion is not an acceptable medical source under the regulations. (Tr. 34).   Further, the ALJ found that Mr. Turner's assessment of Plaintiff's RFC was not consistent with the findings made during clinical examination and are not consistent with the findings throughout the evidence.  (Tr. 34).  Although the ALJ did not indicate the exact weight he accorded Mr. Turner's opinion, as Mr. Turner is a nurse practitioner for Dr. DiGeronimo, it is evident to the reviewing Court that the ALJ accorded Mr. Turner's opinion little weight. (Tr. 28).  Additionally, even though the ALJ failed to specify the weight accorded to Mr. Turner's opinion, the ALJ's discussion of the record as a whole enables the Court to follow his reasoning. *See Voronova v. Astrue,* 2012 WL 2384414, at *4 (M.D. Fla. May 7, 2012) (finding an ALJ did not err by failing to specifically address the weight given to an "other source" because the Court could follow ALJ's reasoning).  For these reason, the Court finds that the ALJ did not err by failing to specify the weight he accorded Mr. Turner's opinion or for not according Mr. Turner's opinion significant weight.

### iii) Dr. Jawan Ayercole

Plaintiff argues that the ALJ erred in according significant weight to the findings of Dr. Ayercole because Dr. Ayercole's hematology findings do not constitute an opinion to be weighed. (Doc. 17 p. 22). Plaintiff argues that these hematology findings provide no insight as to Plaintiff's functional limitations and that the ALJ's erroneous weighing of medical evidence warrants a remand. (Doc. 17 p. 23). Defendant responds that the ALJ properly assigned significant weight to Dr. Ayercole's findings, as they were consistent with the evidence as a whole. (Doc. 18 p. 10).

The medical evidence in the record pertaining to Dr. Ayercole is as follows. On June 17, 2010, Plaintiff presented to Central Tampa Hematology and Oncology and was examined by Dr. Ayercole. Dr. Ayercole noted that Plaintiff complained of fatigue, shortness of breath, frequent urination, muscle pain, dizziness, paresthesias, memory loss, and syncope. (Tr. 349). Dr. Ayercole noted that Plaintiff was alert and oriented, that she had normal posture and motor behaviors, and that she was appropriately dressed and groomed. (Tr. 350). Plaintiff's neck, respiratory, cardiovascular, gastrointestinal, lymphatic, and musculoskeltal examinations were normal. (Tr. 351). Dr. Ayercole diagnosed Plaintiff with possible monoclonal gammopathy and multiple unexplained symptoms. (Tr. 351). After a followup visit on July 8, 2010, Dr. Ayercole again noted that Plaintiff's neck, respiratory, cardiovascular, gastrointestinal, lymphatic, and musculoskeltal examinations were normal. (Tr. 346-347). Dr. Ayercole diagnosed Plaintiff with increased white blood cell count, anemia, and monoclonal gammopathy. (Tr. 344). Plaintiff presented to Dr. Ayercole again on July 29, 2010. Plaintiff's examinations were again normal and Dr. Ayercole diagnosed Plaintiff with anemia and monoclonal gammopathy. (Tr. 344).

As stated above, whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physician and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel,* 631 F3d at 1178-79.  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In this case, Dr. Ayercole's treatment notes clearly demonstrate that he commented upon Plaintiff's impairments and symptoms, and thus, pursuant to *Winschel*, his opinions constituted a medical opinion.  The ALJ accorded Dr. Ayercole's findings significant weight, explaining that these findings "are consistent with the medical evidence of record as a whole." (Tr. 23). Substantial evidence supports this finding as various other medical sources of record revealed normal findings.  For example, Dr. DiGeronimo's records demonstrated normal cardiac examination, no spasm or trigger points in Plaintiff's neck or back, full range of motion of her upper and lower extremities, normal grasp, negative straight leg raising, and no tenderness or joint effusion. (Tr. 33, 267-270, 274-275, 278, 282-287, 289-290, 291-292, 296-297, 305-308, 370, 375, 377, 379).  Additionally, Plaintiff's examinations at Health Sciences Center Medical Clinic revealed stable cardiovascular condition and normal cardiovascular system. (Tr. 27, 28, 240, 253, 415, 426, 429).  Finally, treatment notes from Suncoast Community Health Center revealed normal findings. (Tr. 324).  For these reasons, the ALJ did not err in according the findings of Dr. Ayercole significant weight.

      **b) Whether the ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in analyzing the required factors when assessing Plaintiff's credibility**

Plaintiff argues that the ALJ erred by failing to make a proper credibility finding as to Plaintiff's testimony concerning her subjective symptoms. (Doc. 17 p. 23). Plaintiff contends that her testimony is highly consistent with the medical evidence of record. (Doc. 17 p. 24). Defendant responds that, contrary to Plaintiff's contentions, the ALJ properly considered Plaintiff's subjective complaints and articulated adequate reasons for discounting her allegations of disabling limitations. (Doc. 18 p. 11).

In the Eleventh Circuit, when a claimant alleges disability based on pain or other subjective symptoms, "[t]he pain standard requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If a claimant's subjective testimony of pain is supported by medical evidence that satisfies the pain standard, the claimant's testimony is itself sufficient to support a finding of disability. *Holt* at 1223. However, an ALJ may choose not to credit such testimony. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). If the ALJ decides not to credit the testimony of the claimant about his subjective pain, the ALJ must "articulate explicit and adequate reasons for doing so." *Id.* at 1561-62. If the ALJ fails to do so, then, as a matter of law, that testimony is to be accepted as true. *Id.* at 1562.

In this case, the ALJ found that Plaintiff's "statements concerning her impairments and their impact on her ability to work not entirely credible in light of the findings made on examination." (Tr. 32). The ALJ acknowledged Plaintiff's history of diabetes mellitus,

-12-

neuropathy, cardiomyopathy, hypertension, obesity, and sleep apnea. (Tr. 32). The ALJ, however, found that the record does not support that these conditions singularly or in combination prevent Plaintiff from performing all work activity. (Tr. 32). For example, the ALJ noted that Plaintiff's symptoms improved after undergoing placement of an AICD.[3] (Tr. 32). In fact, the ALJ explained, on March 24, 2010, Dr. Rogal stated that from a cardiovascular viewpoint, Plaintiff's condition was stable and that Plaintiff had not had any defibrillator discharges since the previous year." (Tr. 32). Further, the ALJ noted that Plaintiff's records show that during a followup with physician assistant Jennifer Gerges, Plaintiff denied having parethesias, headaches, weakness, dizziness, any mental status changes, memory loss or speech abnormalities. (Tr. 32). In addition, Plaintiff denied experiencing any chest pain, fatigue, or tachycardia and, after a review of Plaintiff's laboratory studies, Plaintiff's was assessed with controlled diabetes mellitus. (Tr. 32-33).

The ALJ articulated explicit and adequate reasons in his decision not to credit Plaintiff's subjective symptoms. For this reason, the Court finds that the ALJ did not err in not crediting Plaintiff's subjective symptoms.

> c) **Whether the ALJ's Step 5 determination is unsupported by substantial evidence because the ALJ relied upon an incomplete hypothetical question asked to the VE**

Plaintiff argues that the ALJ erred by posing an incomplete hypothetical question to the VE. (Doc. 17 p. 24). According to Plaintiff, the ALJ's alleged errors in determining Plaintiff's RFC and credibility render the ALJ's Step 5 finding unsupported by substantial evidence. (Doc. 17 p. 25). Specifically, Plaintiff contends that the hypothetical question posed to the VE should have reflected the significant limitations opined by Dr. DiGeronimo.

---

[3] The Court understands "AICD" to be an abbreviation for automatic implanted cardioverter defibrillator.

Defendant responds that substantial evidence supports the ALJ's RFC finding and hypothetical question. (Doc. 18 p. 16). Defendant contends that the ALJ properly rejected Plaintiff's subjective complaints and Dr. DiGeronimo's limitation findings and, thus, was not required to instruct the VE to assume these limitations. (Doc. 18 p. 16).

At step five of the sequential evaluation process, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1180 (11th Cir. 2011). In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Id.*

At the administrative hearing, the ALJ posed the following hypothetical question to the VE:

> Doctor, assume a person Claimant's age, education, and work experience who can lift up to ten pounds occasionally and sedentary work as defined by the regulations, stand or walk approximately two hours per eight-hour work day, and sit for approximately six hours per eight-hour work day with normal breaks, never climb ladders, ropes, or scaffolds, occasional all the other postural limitations including climbing of ramps or stairs, balancing, stooping, crouching, kneeling, and crawling, avoid concentrated exposure to irritants such as fumes, odors, dust, and gases, avoid concentrated exposure to hazards, avoid concentrated exposure to irritants such as fumes, odors, dust, and gases, avoid concentrated exposure to hazards, avoid concentrated exposure to extreme cold and extreme heat. Could an individual with these limitations perform Claimant's past work as the claimant performed it or as customarily performed?

(Tr. 63). The VE responded "No, Your Honor". (Tr. 63). The ALJ then asked the VE to assume these functional limitations, and asked "would there be other jobs in the region or national economy such a person could perform?" (Tr. 63). The VE responded "yes" and testified that Plaintiff could work as a reservationist, DOT number 238.367-038, and as a non-emergency

dispatcher, DOT number 239.367-022. (Tr. 63). The ALJ next asked the VE whether the addition of an at-will sit/stand option to the hypothetical would alter the number of jobs the hypothetical person could work. The VE testified that an at-will sit/stand option would not alter the hypothetical person's ability to work as a reservationist or non-emergency dispatcher. (Tr. 63).

An ALJ is not required to include findings he has rejected as unsupported in a hypothetical question to a VE. *Crawford,* 363 F.3d at 1161. As explained above, the ALJ properly rejected the opinion of Dr. DiGeronimo and Plaintiff's subjective complaints. Accordingly, the ALJ was not required to include the limitations opined by Dr. DiGeronimo or claimed by Plaintiff in his hypothetical question. The hypothetical posed to the VE contained all the limitations the ALJ found in his RFC determination and was supported by substantial evidence. For this reason, the Court finds that the ALJ did not err at Step 5 in relying on the testimony of the VE.

### IV. Conclusion

The Court finds that the ALJ's decision is consistent with the requirements of the law and is supported by substantial evidence. Therefore,

**IT IS RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

In Chambers, Fort Myers, Florida, this 11th day of February, 2014.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

The Court Requests that the Clerk of Court Mail or Deliver Copies of this Order to All Parties and All Counsel of Record