UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RACHEL LYNN DAVIS,

       Plaintiff,

v.                          CASE NO.  8:12-CV-2811-T-17DNF

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

       Defendant.

_____/

ORDER

This cause is before the Court on:

Dkt. 19   Report and Recommendation
Dkt. 20   Objections
Dkt. 21   Response to Objections

Plaintiff Rachel Lynn Davis seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's claim for Supplemental Security Income.  In the Report and Recommendation, the assigned Magistrate Judge recommends that the decision of the Commissioner be affirmed.

Plaintiff Davis has filed Objections to the Report and Recommendation. The Government has filed a Response to Plaintiff's Objections.

I.  Standard of Review
A.  Report and Recommendation

The District Court reviews de novo the portions of the Report and

Case No. 8:12-CV-2811-T-17DNF

Recommendation or specified proposed findings to which an objection is made. The District Court may accept, reject, or modify in whole or in part the report and recommendation of a magistrate judge, or may receive further evidence, or may recommit the matter to the magistrate judge with instructions.

B. Social Security Claims

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied. Richardson v. Perales, 402 U.S. 389, 390, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic, for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622 (11th Cir. 1987), Lamb, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. Bowen v. Heckler, 748 F.2d 629, 634 (11th Cir. 1984).

II. Objections

Plaintiff objects to the recommendations of the assigned Magistrate Judge in the Report and Recommendation.  Plaintiff argues that the Court should reject the following recommendations: 1) ALJ did not err in determining Plaintiff's residual functional capacity; and 2) ALJ did not err in finding that Plaintiff could perform a range of sedentary work.

Case No. 8:12-CV-2811-T-17DNF

A.  ALJ's Residual Functional Capacity Determination

In seeking review, Plaintiff contended that the ALJ's Residual Functional Capacity ("RFC") determination was unsupported by substantial evidence, because the ALJ erred in weighing and evaluating the medical evidence of record.   The ALJ accorded little weight to the opinion of Dr. DiGeronimo that Plaintiff could not work a full eight hour workday, based on inconsistencies between Dr. DiGeronimo's findings as to Plaintiff's RFC, and his findings upon multiple physical examinations, and because the opinion was not supported by the findings of other examining physicians.  The assigned Magistrate Judge noted that the ALJ articulated his reasons for according Dr. DiGeronimo's opinion little weight, determined that substantial evidence supports the ALJ's determination, and concluded that the ALJ did not err in according little weight to the opinion of Dr. DiGeronimo.

Plaintiff objects that Dr. DiGeronimo's opinion was more detailed than the simple opinion "Plaintiff could not work a full eight hour day," listing all details included in the Residual Functional Capacity Questionnaire (Dkt. 13-11, pp. 45-47).  Plaintiff objects that the ALJ did not properly evaluate Dr. DiGeronimo's opinion, which led to further errors.  Plaintiff argues that the ALJ did not evaluate Dr. DiGeronimo's opinion pursuant to the factors set forth in 20 C.F.R. Sec. 416.927(c)(2): 1) length of treatment relationship and frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and other facts that tend to support or contradict the opinion.  Plaintiff argues that the ALJ's decision relies on two factors, consistency and supportability, and decides not to give controlling weight to Dr. DiGeronimo's opinion.   Plaintiff further argues that the ALJ selectively picked examination evidence that favors a finding of non-disability.  Plaintiff emphasizes that Dr. DiGeronimo had an extensive treatment relationship with Plaintiff, relied upon nerve conduction velocity studies that proved Plaintiff's sensory neuropathy, consistently found that Plaintiff had poor fine motor coordination in her lower extremities, and had

3

Case No. 8:12-CV-2811-T-17DNF

difficulty standing due to weakness and edema in her upper and lower extremities.
Plaintiff argues that Dr. DiGeronimo diagnosed Plaintiff as having peripheral
neuropathy, extremity pain, extremity paresthesia, muscle spasms and depression, and
prescribed numerous medications.

Plaintiff also argues that the Magistrate Judge disagrees with Plaintiff's
contention that the ALJ's accordance of significant weight to the findings of Dr. Ayercole
was erroneous.  If the Magistrate Judge is correct that the Magistrate Judge did not err
in according significant weight to Dr. Ayercole's hematology findings, such evidence
does not provide any opinion as to Plaintiff's functional limitations.  Plaintiff further
argues that, assuming the Magistrate Judge is correct that the failure to weigh or
incorporate much of Nurse Practitioner's opinion was supported by substantial
evidence, the ALJ relied on the determinations of the State Disability experts.  Plaintiff
argues that the opinion of a non-examining reviewing physician, taken alone, does not
constitute substantial evidence to support an administrative decision.  Swindle v.
Sullivan, 914 F.2d 222, 226, n.3 (11th Cir. 1990).

Plaintiff argues that this matter should be remanded for further proceedings, for a
proper determination regarding the extent of medical improvement of Plaintiff's
impairments.

1. Discussion

Before proceeding to Step 4 of the sequential evaluation process, the ALJ, after
consideration of the entire record, determined that Plaintiff Davis has the residual
functional capacity to perform a range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that
> the claimant has the residual functional capacity to perform a range of

Case No. 8:12-CV-2811-T-17DNF

> sedentary work. The claimant has the ability to stand and or walk two
> hours during an eight-hour day, and sit for six hours during an eight-hour
> day with normal breaks. However, the claimant requires a sit/stand
> option. The claimant can occasionally perform all postural activities
> including climbing of ramps, stairs, balancing, stooping, kneeling, and
> crawling. The claimant should never climb ladders, ropes or scaffolds.
> She should avoid concentrated exposure to fumes, odors, gases,
> hazards, extreme cold and extreme heat.

The ALJ considered all symptoms, and the extent to which Plaintiff's symptoms could
reasonably be accepted as consistent with the objective medical evidence and other
evidence, including Plaintiff's subjective complaints of pain, evaluated under the two-
step "pain standard," and opinion evidence.   The pain standard requires (1) evidence
of an underlying medical condition and either (2) objective medical evidence that
confirms the severity of the alleged pain arising from that condition or (3) that the
objectively determined medical condition is of such a severity that it can be reasonably
expected to give rise to the alleged pain. See Landry v. Heckler, 782 F.2d 1551, 1553
(11th Cir.1986). The standard also applies to complaints of subjective conditions other
than pain. Jackson v. Bowen, 873 F.2d 1111, 1114 (8th Cir.1989). In his evaluation,
the ALJ explained the weight the ALJ accorded to the medical opinions. The ALJ
evaluated Plaintiff's testimony under the required pain standard, explaining his
conclusion as to Plaintiff's credibility. The ALJ also considered the determinations of
the State Agency Disability experts.

a. ALJ's Decision

1. Plaintiff's Credibility

     The ALJ acknowledged that the following two-step process in considering a
claimant's symptoms: 1) First, determine whether there is an underlying medically
determinable physical or mental impairment that could reasonably be expected to
produce the claimant's pain or other symptoms; 2) Second, evaluate the intensity,

Case No. 8:12-CV-2811-T-17DNF

persistence and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. Whenever statements about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ is required to make a finding on the credibility of the statements based on a consideration of the entire case record (Dkt. 13-2, p. 33).

The ALJ conducted a hearing on February 7, 2011. Plaintiff testified that after her pacemaker was put in, Plaintiff could not work. (Dkt. 13-2, p. 50). Plaintiff Davis testified that Plaintiff cannot walk due to numbness in her feet from neuropathy. (Dkt. 13-2, p. 50). The ALJ noted that Plaintiff was in a wheelchair, but he did not see a prescription for a wheelchair in the file. When the ALJ asked if Plaintiff ever walked without a walker or in a wheelchair, Plaintiff responded "No." (Dkt. 13-2, p. 50); Plaintiff further testified that her doctors did not prescribe any assistive device (Dkt. 13-2, p. 51). Plaintiff also testified that Plaintiff could walk four minutes without any assistive device, and could stand for a minute (Dkt. 13-2, p. 53). Plaintiff testified that Plaintiff could sit for ten minutes at a time, and could not lift any amount of weight during an eight-hour day. (Dkt. 13-2, p. 54). Plaintiff testified that if Plaintiff used her hands, her hands swelled. (Dkt. 13-2, p. 51). Plaintiff testified that Plaintiff takes medication that helps control her diabetes, and Plaintiff uses a CPAP machine for sleep apnea, but is able to sleep seven hours a night. (Dkt. 13-2, p., 52). Plaintiff testified that Plaintiff has ongoing urinary incontinence, and wears diapers. (Dkt. 13-2, pp. 52-53).

Upon further examination by Plaintiff's counsel as to any continuing problems, Plaintiff testified as to ongoing pain and rapid heartbeat ("pulsurate [sic] real fast") from the automatic implanted cardioverter defibrillator ("AICD"), which is distracting to Plaintiff. (Dkt. 13-2, pp. 54-55). Plaintiff further testified as to ongoing pain and fatigue; Plaintiff's legs hurt and are numb (Dkt. 13-2, p. 55). Plaintiff sits in a lounge chair most of the day, and elevates her feet so they won't swell. (Dkt. 13-2, pp. 55-56). Plaintiff

6

Case No. 8:12-CV-2811-T-17DNF

testified that if her feet swell, Plaintiff cannot put shoes on, and cannot walk. (Dkt. 13-2, pp. 56-57). Plaintiff further testified that her hands swell every three to five weeks, and estimated that they remain swollen for two weeks. (Dkt. 13-2, p. 57). Plaintiff testified that Plaintiff becomes drowsy from taking her medications. (Dkt. 13-2, p. 58). Plaintiff testified that Plaintiff had a mild tremor in her arms and hands and muscle spasms in her legs (Dkt. 13-2, p. 67).

The ALJ found Plaintiff's statements concerning her impairments and their impact of her ability to work not entirely credible in light of findings made on examination, and finding inconsistencies between Plaintiff's allegations of disabled symptomology and the objective medical evidence. The ALJ acknowledged Plaintiff's history of diabetes mellitus, neuropathy, cardiomyopathy, hypertension, obesity and sleep apnea, but found that the record did not support that the conditions, considered singly and in combination, prevented Plaintiff from performing all work activity. The ALJ found that the objective medical evidence showed that after the AICD implantation, Plaintiff's symptoms improved, referring to Dr. Rogal's March 24, 2010 opinion that from a cardiovascular standpoint Plaintiff's condition was stable, and March 8, 2010 evaluation by Jennifer Gerges, P.A., in which Plaintiff denied paresthesias, weakness, dizziness, mental status changes, memory loss or speech abnormalities, and denied chest pain, fatigue or tachycardia. Based on laboratory studies, Plaintiff was assessed with controlled diabetes mellitus. The ALJ also refers to Dr. DiGeronimo's evaluations on 4/8/2009, and 6/24/2009, in which Plaintiff had a full range of motion of her extremities, her balance was intact, with no shuffling and Plaintiff walked freely without the use of an assistive device.

2 .  The Medical Record

Plaintiff Davis has a complex medical history. At Step Two of the sequential evaluation process, in determining that Plaintiff has severe impairments, the ALJ noted

Case No. 8:12-CV-2811-T-17DNF

Plaintiff's treatment for those impairments from 11/21/2008 to 2/21/2011; the Court has carefully examined the Administrative Record, including Plaintiff's medical records. Because Plaintiff Davis had distinct medical conditions, Plaintiff Davis had different treating physicians. Plaintiff was treated at Suncoast Community Health Center as Plaintiff's primary care physician for diabetes mellitus, to refill prescriptions, and to obtain referrals for laboratory tests and to specialists.

a. Cardiomyopathy

Plaintiff was referred to Dr. Max Rattes for cardiac evaluation because of edema (Dkt. 13-7, p. 25); Dr. Rattes noted "edema for 3 years legs" in "History of Present Illness." (Dkt. 13-7, p. 25). On 11/11/2018, Dr. Rattes noted "Edema Present +1 pitting lower legs." (Dkt. 13-7, p. 27). Dr. Rattes' assessment included the following: abnormal electrocardiogram, benign hypertensive heart disease without congestive heart failure, benign essential hypertension, edema, hypercholesterolemia, morbid obesity, diabetes mellitus, fatigue, and "gait disturbance from ? a neuropathy." (Dkt. 13-7, p. 28). Dr. Rattes recommended that Plaintiff see a neurologist to evaluate for possible ataxia and neuropathy (Dkt. 13-7, p. 28). On 11/21/2008, the following procedures were performed: right and left heart catheterization, coronary angiography, left ventriculography, and right iliofemoral angiography (Dkt. 13-7, p. 8). In a follow-up on 12/3/2008, consulting physician Dr. J. Thompson Sullenbarger noted Plaintiff was on metformin 500 mg b.i.d, Crestor 5 mg q.d., Darvocet p.r.n., Lasix 40 mg q.d., metoprolol XL 50 q.d. and Coreg 6.25 mg b.i.d. Dr. Sullenbarger also noted "Review of systems is significant for obesity, tremors, polydipsia, night sweats, pedal edema and ataxia." On examination, Dr. Sullenbarger indicates "Peripheral pulses are present bilaterally, and there is trace peripheral edema." (Dkt. 13-7, p. 14).

The AICD was implanted on December 4, 2008. There was a follow-up with Dr. Max Rattes on 2/16/2009 (Dkt. 13-7, p. 17) which states "Edema for 3 years resolved." Medications include furosemide 40 mg once a day, metformin HCl 500 mg twice a day,

8

Case No. 8:12-CV-2811-T-17DNF

Crestor 5 mg once a day, lisinopril 10 mg once a day, Coreg 6.25 mg twice a day, and propoxyphene N-APAP [Darvon] 100-650 mg, as needed.  Dr. Rattes also states: "Systemic symptoms: Feeling tired (fatigue)......Musculoskeletal symptoms: No myalgias.  Arthralgias knees since fell 7 mos. ago.  No muscle cramps and no localized joint stiffness.  Neurological symptoms: No dizziness, no vertigo, no convulsions, no slurred speech, and no tremor.  Ataxia and numbness of the legs...." (Dkt. 13-7, p. 18). Upon examination, Dr. Rattes noted: "Edema Present +1 pitting lower legs." (Dkt. 13-7, p. 19).   Dr. Rattes again recommended that Plaintiff see a neurologist to evaluate for possible ataxia and neuropathy.  (Dkt. 13-7, p. 21).

        Plaintiff had a follow-up appointment with Dr. Philip Rogal, USF Health Sciences Center Medical Clinic, on 5/7/2009 (Dkt. 13-7, p. 59), which notes "1+ ankle and pretibial edema" (Dkt. 13-7, p. 60).  Dr. Rogal states "The patient is stable from a cardiovascular viewpoint.  Will increase carvedilol from 6.25 to 12.5 mg b.i.d and also increase lisinopril 10 mg. daily to 10 mg b.i.d.  To treat the LV dysfunction more vigorously." (Dkt. 13-7, p. 60).  Plaintiff returned to USF Health Sciences Center Medical Clinic for another follow-up on 6/19/2009; upon examination, the record states "Pitting edema." (Dkt. 13-7, p. 63).   Medications included: Gabapentin 300 mg 1 capsule 3 times a day, carvedilol 6.25 mg 1 tablet twice daily, propoxyphene N-APAP 100-650 mg 1 tablet q8h p.r.n., metformin HCl 500 mg 1 tablet 2 times a day, Crestor 5 mg 1 tablet daily, furosemide 40 mg 1 tablet daily, lisinopril 10 mg 1 tablet daily. (Dkt. 13-7, p. 72).

        Plaintiff returned for a follow up with Dr. Rogal on 9/9/2009, referred by Jennifer Curtis (Suncoast).  Dr. Rogal states:

        **SUBJECTIVE:**
        The patient is a 37 year old woman with a history of nonischemic cardiomyopathy dating back to December 2007.  At that time her ejection fraction was said to be in the 10% to 15% range.  She is diabetic and is

Case No. 8:12-CV-2811-T-17DNF

> also on Crestor for control of hyperlipidemia.  She takes lisinopril,
> carvedilol, furosemide for cardiomyopathy.  She has a St. Jude
> pacemaker defibrillator implanted.  Two weeks ago, the patient had a
> discharge of the defibrillator, but this has not recurred.  A defibrillator
> check in June of this year was demonstrated normal device function.  In
> addition, the patient has noted swelling of the left hand and fingers for the
> past week.   She does not recall any injury.

(Dkt. 13-9, p. 68).

Dr. Rogal noted 1+ ankle and pretibial edema.  "The left hand is swollen and mildly

tender  with swelling of the interphalangeal joints most markedly.  There is mild

tenderness of the hand in general without any clinical evidence of acute cellulitis."  (Dkt.

13-9, p. 69).  In the Assessment/Plan, Dr. Rogal states:

> "The pacemaker defibrillator needs another interrogation to see what
> triggered the recent discharge.  She has been given an appointment to
> see Dr. Leonelli tomorrow for this interrogation and further adjustment of
> medications as needed.  She was advised to take ibuprofen 800 mg 3
> times a day and to see her primary doctor promptly for evaluation of the
> swelling of the left hand, which may be secondary to tenosynovitis.  She
> will return here in 1 month for re-evaluation of her cardiac status."

(Dkt. 13-9, p. 69).

Plaintiff returned to USF Health Sciences Medical Clinic on 9/10/2009 after an

unheralded shock (Dkt. 13-9, pp. 66-67).   The Assessment/Plan states:

> "Interrogation of the ICD shows probable SVT (regular V response)
> ineffective ATP and single shock (V rate dropped below cut off) Evidence
> o L hand and arm swelling.  JVP could not be evaluated US of s/clavian
> vein shows no obstruction I have increased Coreg to 25 mg bid  She is
> scheduled to see Dr. Curtis in two weeks for further management"

(Dkt. 13-9, p. 67).

Plaintiff returned to USF Health Sciences Medical Clinic for a follow-up

10

Case No. 8:12-CV-2811-T-17DNF

appointment on 10/15/2009. (Dkt. 13-9, pp. 42-43). Upon examination, Plaintiff had

trace ankle edema.

The Assessment/Plan states:

> "The patient is stable from a cardiovascular standpoint.  Her blood
> pressure is significantly improved although mild diastolic hypertension
> persists.  She will continue present medical regimen including Crestor 5
> mg daily for hyperlipidemia, metformin 500 mg b.i.d for her diabetes, as
> well as lisinopril 10 mg b.i.d., and carvedilol 12.5 mg b.i.d. for her
> cardiomyopathy.  She will return in 3 months for re-evaluation."

(Dkt. 13-9, p. 43).

Plaintiff had a follow-up appointment at USF Health Sciences Medical Clinic on

11/20/2009.  (Dkt. 13-9, pp. 40-42).  Upon examination, Plaintiff had +1 peripheral

edema and +2 pulses in extremities bilaterally.  The Assessment/Plan states:

> "37 y/o with above hx who comes to clinic for follow up.  No ICD shocks or
> palpitations since last visit.  P/E with suboptimally controlled blood
> pressure and with warmth of left knee and +1 edema of left leg.  CTA lung
> fields and no signs of decompensated heart failure.  Last echo showed
> normal systolic function with an EF of 55-60%.  ICD interrogation shows
> no SVT or VT since last interrogation.  Adequate thresholds, impedance
> and battery life.  Patient with compensated heart failure and remarkable
> improvement of EF.  Leg symptoms most like due to degenerative vs.
> inflammatory arthritis of knee.  Will change Lasix to HCTZ and increase
> lisinopril."

(Dkt. 13-9, p. 42).

Plaintiff returned for a follow up with Dr. Rogal on 3/24/2010 (Dkt. 13-9, pp. 28-

29).  At that time, Dr. Rogal noted in "History of Present Illness" (Dkt. 13-9, p. 28) "She

feels well generally apart from arthritis of her knees."  Upon examination, Dr. Rogal

noted "EXTREMITIES: Trace ankle edema."  In the Assessment/Plan, Dr. Rogal states:

"The patient is stable from a cardiovascular standpoint.  She will continue present

Case No. 8:12-CV-2811-T-17DNF

medication and return in 6 months for reevaluation.  (Dkt. 13-9, p. 29).  Plaintiff had an
echocardiogram on 4/7/2010 (Dkt. 13-9, pp. 26-27).


Plaintiff returned to USF Health Sciences Medical Clinic for a pacemaker
checkup on 5/7/2010.  Upon examination, there was no peripheral edema, and +2
pulses in upper and lower extremities (Dkt. 13-9, pp. 24-26).

b.  Diabetes Mellitus

During 2009, Plaintiff was treated at Suncoast Community Health Centers as
Plaintiff's primary care physician: 3/11/2009, 3/18/2009, 6/3/2009, and 10/14/2009.
(Dkt. 13-8, pp. 2-10).   During 2010, Plaintiff was further treated at Suncoast on
3/10/2010, 6/21/2010, and 10/5/2010; in 2011, Plaintiff was treated at Suncoast on
1/14/2011 and 1/25/2011 (Dkt. 13-11, pp. 2-43).

On 3/18/2009, Plaintiff was seen at Suncoast for a check-up; at that time Plaintiff
attended the appointment in her grandmother's wheelchair.  Upon examination,
Suncoast noted "no edema, clubbing or cyanosis, and intact pulses" in Plaintiff's
extremities  (Dkt. 13-8, p. 9).   On 6/3/2009, upon examination, Suncoast noted "no
edema, clubbing or cyanosis, Pulses intact, No foot ulcers" in Plaintiff's extremities (Dkt.
13-8, p. 5).   On 3/10/2010, upon examination, Suncoast noted "no clubbing, cyanosis
or edema.  Peripheral pulses: normal (2+) bilaterally" in Plaintiff's extremities (Dkt. 13-
11, p. 42).  The record also states:

> Neurology:
> Has appt. tomorrow with Dr. DiGeronimo.
> Denies: PARESTHESIAS, HEADACHE, WEAKNESS, DIZZINESS,
> MENTAL STATUS CHANGE, MEMORY LOSS, SPEECH
> ABNORMALITY

Case No. 8:12-CV-2811-T-17DNF

Cardiology:
Appt. with Dr. Rogal (cardiologist) at USF on 3/24 for f/u.
Denies: DIZZINESS, CHEST PAIN, LEG EDEMA, SYNCOPE,
ORTHOPNEA, FATIGUE, PAROXYSMAL NOCTURNAL DYSPNEA,
TACHYCARDIA, PALPITATIONS, SOB.

(Dkt. 13-11, p. 41).

On 6/21/2010, Plaintiff returned to Suncoast to obtain referrals for Dr. DiGeronimo, a rheumatologist, physical therapy and prescriptions (Dkt. 13-11, p. 39). Plaintiff was in a wheelchair on that day.   On 10/15/2010, Plaintiff returned to Suncoast for follow-up after hospitalization.  Plaintiff refilled prescriptions for Coreg, Metformin and Crestor.  Upon examination, no clubbing, cyanosis or edema was noted in Plaintiff's extremities.  Plaintiff was prescribed Darvocet-N-100, 650 mg-100 mg, 1 tablet every four hours, five days for knee pain (Dkt. 13-11, pp. 36-37).  Plaintiff returned to Suncoast on 1/14/2011 for a referral to a urologist.  Plaintiff was in a wheelchair.  Upon examination, no clubbing, cyanosis or edema was noted in Plaintiff's extremities.  As to Plaintiff's abnormal sed rate, polyarthralgia, joint inflammation, the progress note states that Plaintiff was referred to a rheumatologist in June as per Dr. DiGeronimo's recommendation, but Plaintiff did not keep the appointment (Dkt. 13-11, pp. 32-35).  Plaintiff returned to Suncoast on 1/25/2011 for a follow-up appointment. Plaintiff was in a wheelchair on that day.  Upon examination, no clubbing, cyanosis or edema was noted in Plaintiff's extremities.   Plaintiff obtained referrals for physical therapy, a rheumatologist (Janer), a hematologist (Ayer-Cole), a neurologist DiGeronimo), a urologist (Dholakia), a cardiologist (Rogal) and a pulmonologist (Ackerman) (Dkt. 13-11, pp. 3-28)

c. Neuropathy

Suncoast Community Health Centers referred Plaintiff to neurologist Dr. DiGeronimo, who saw Plaintiff on 4/9/2009, 4/21/2009, 4/27/2009, 5/26/2009,

Case No. 8:12-CV-2811-T-17DNF

6/24/2009, 8/11/2009, 9/22/2009, 12/14/2009, 3/9/2010, 5/18/2010, 6/21/2010 and
9/14/2010 (Dkt. 13-7, pp. 87-128, 13-8, pp. 55-72) for Plaintiff's complaint of pain in
upper and lower extremities.   Dr. DiGeronimo prescribed various medications for pain
in the course of treatment:   Gabapentin 300 mg tid (nerve pain); Gabapentin 600 mg
tid (nerve pain); Sulindac 150 mg bid (NSAID); Naprosyn 500 mg bid (NSAID);
carbamazepine 200 mg tid (nerve pain); ibuprofen 800 mg tid; hydrocodone 7.5/325 mg
tid (narcotic/acetominophen); Darvocet-N100 tid (narcotic/acetominophen); Tramadol
50 mg 8 daily;

Dr. DiGeronimo repeatedly observed a full range of motion in Plaintiff's upper
and lower extremities, no contractures or spasms, and no edema;  Plaintiff's back had a
full range of motion, with no spasms or trigger points noted; and a seated straight leg
raise was negative.  Plaintiff was able to heel/toe walk without discomfort.  Dr.
DiGeronimo repeatedly observed: "Balance is intact.  No shuffling noted.  Walks freely
without the use of assistive devices."   In April, 2009, an EMG/NCV test of the
extremities was performed, as well as an arterial ultrasound; the NCV results were
consistent with sensory neuropathy (Dkt. 13-7, pp. 96-102).   On 6/24/2009, Dr.
DiGeronimo noted that laboratory testing on 6/2/2009 indicated an elevation in gamma
globulins that appeared to be polyclonal, suggesting a chronic inflammatory response.
(Dkt. 13-7, p. 111).  On that day, and on 8/11/2009, Plaintiff had a full range of motion
in upper and lower extremities, no edema in her lower extremities, Plaintiff's "balance
was intact, no shuffling noted, and walks freely without assistive devices. " (Dkt. 13-7,
pp. 110, 112).

On 9/22/2009, Dr. DiGeronimo noted that Plaintiff was walking better, but still
has gait ataxia and slowness in her walking.  (Dkt. 13-7, p. 106).  Dr. DiGeronimo
states:

**Peripheral Vascular System:**  No swelling, varicosities, tenderness or

Case No. 8:12-CV-2811-T-17DNF

edema noted; pulses and temperature are normal.

**Gait and Station:**   difficulty walking and standing because of leg weakness

**Muscle Strength in Upper and Lower Extremities:**   weakness of the lower extremities

**Muscle Tone in Upper and Lower Extremities:**   No spasticity, flaccidity or abnormal movements

(Dkt. 13-7, p. 107).

On 3/9/2010, Dr. DiGeronimo noted that Plaintiff had a spasmodic gait.  (Dkt. 13-8, p. 62).   On 5/18/2010, Dr. DiGeronimo noted that Plaintiff attended the appointment in a manual wheelchair; Dr. DiGeronimo referred Plaintiff to Dr. Jawan Ayer-Cole, a hematologist,  for further evaluation. (Dkt. 13-8, p. 60).

On 6/21/2010, Dr. DiGeronimo observed edema in the left upper extremity and lower extremities, difficulty walking due to pain and weakness, weakness in the lower extremities and left upper extremity, but no spasticity, flaccidity or abnormal movements (Dkt. 13-8, pp. 56-57).  Dr. DiGeronimo referred Plaintiff to a rheumatologist, prescribed Tramadol for pain, sent Plaintiff to physical therapy and for a nerve conduction study (Dkt. 13-8, p. 57).

On 9/14/2010, Dr. DiGeronimo noted Plaintiff attended the appointment in a manual wheelchair.  On that day, Dr. DiGeronimo noted a full range of motion in upper and lower extremities, no spasms or contractures; Dr. DiGeronimo noted +2-3 edema in the lower extremities, without joint tenderness.    (Dkt. 13-8, pp. 54-55).

d.  Hematology

Case No. 8:12-CV-2811-T-17DNF

On 7/29/2010, Dr. Ayer-Cole states that Plaintiff was referred due to an abnormal serum protein electrophoresis (SPEP), that Plaintiff "sees Dr. DiGeronimo for neuropathy which has been progressing over last several months. [Plaintiff] [r]eports chronic pain in back and legs, and swelling in joints resulting in difficulty walking, and increased fatigue over the last six months"(Dkt. 13-8, p. 28).

Upon examination on 7/8/2010, 7/29/2010 and 8/17/2010, Dr. Ayer-Cole found Plaintiff's systems to be normal. Dr. Ayer-Cole noted the following as to Plaintiff's musculoskeletal system:

> Normal: There is normal jaw movement with no redness, swelling, tenderness or deformity at the temporomandibular joint. The neck, spine, shoulders, elbows, wrists, hands, hips, knees, ankles and feet are symmetrical with normal muscle tone, no tenderness with palpation or movement. ROM is within normal limit.

Dr. Ayer-Cole's records indicate that on 8/17/2010, Plaintiff complained of fatigue, shortness of breath, chest pain, palpitations, edema and tachycardia/increased heart rate, frequent urination, muscle pain, dizziness, paresthesias, memory loss and syncope (Dkt. 13-8, p. 34).

e. Sleep Apnea

A sleep study was performed at Tampa General Hospital on 6/15/2009; the record states that Plaintiff was previously diagnosed with sleep apnea in 2003. Plaintiff was diagnosed with sever obstructive sleep apnea. The recommendations included a CPAP. (Dkt. 13-7, pp. 45-46).

f. Emergency Hospitalization - Pyelonephritis, Kidney Stones

16

Case No. 8:12-CV-2811-T-17DNF

On 9/23/2010, Plaintiff was admitted to South Florida Baptist Hospital, Plant City, FL, through the emergency room for acute pyelonephrosis, right hydronephrosis (swollen kidney), kidney stones, and cystitis. A ureteral stent was inserted. A CT scan of Plaintiff's abdomen and pelvis showed an enlarged liver, an enlarged adrenal gland and some kidney stones (Dkt. 13-9, p. 18). On 11/11/2010, Plaintiff had a cystoscopy with removal of the right ureteral stent and right ureteral renoscopy. (Dkt. 13-10, p. 9). After the procedure, Plaintiff's physician prescribed Macrobid 100 mg twice daily for one week, and Darvocet-N 100 p.o. 3x daily as needed for pain.

3. RFC of Dr. DiGeronimo

Dr. DiGeronimo completed an RFC Questionnaire on 2/9/2011 (Dkt. 13-11, pp. 45-47). Dr. DiGeronimo's diagnosis was peripheral neuropathy and cardiac pacemaker. Plaintiff's symptoms included difficulty walking, urinary incontinence and diabetes mellitus. Dr. DiGeronimo stated that Plaintiff's symptoms would frequently be severe enough to interfere with the attention and concentration required to perform simple work-related tasks. Dr. DiGeronimo indicated that the only side effects of medication which might impact Plaintiff's capacity for work included leg weakness and gait ataxia. Dr. DiGeronimo further indicated that Plaintiff would require more breaks than a 15-minute break in the morning and afternoon, and a 30 minute break for lunch. Dr. DiGeronimo indicated that Plaintiff could not walk any distance without rest or significant pain, that Plaintiff could sit for 20 minutes at a time, and could sit for 0-1 hours in an 8-hour work day. Dr. DiGeronimo indicated that Plaintiff could not stand or walk for any amount of time in an 8-hour work day, and Plaintiff required a job that permits shifting position from sitting, standing or walking. Dr. DiGeronimo further indicated that Plaintiff would need to take many unscheduled breaks of 15-30 minutes in an 8-hour workday. Dr. DiGeronimo opined that Plaintiff could occasionally lift a weight of less than ten lbs. in an 8-hour work day, and that Plaintiff was very restricted in the use of her hands, fingers and arms for grasping, fine manipulation and reaching

Case No. 8:12-CV-2811-T-17DNF

in an 8-hour work day. Based on his experience with Plaintiff, and based upon objective medical, clinical and laboratory findings, Dr. DiGeronimo estimated that Plaintiff would likely be absent from work as a result of her impairments and treatments more than four times a month.   Dr. DiGeronimo did not answer question #10, which inquires whether Dr. DiGeronimo's patient is a malingerer.   In Dr. DiGeronimo's opinion, Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation.   As to other limitations, Dr. DiGeronimo stated that Plaintiff is unable to work due to neurological and cardiac signs and symptoms. Dr. DiGeronimo indicated that he has treated Plaintiff since 4/9/2009, and in his opinion Plaintiff has had the limitations and restrictions outlined in the RFC Questionnaire since 2008.

The ALJ found that Dr. DiGeronimo's opinion that Plaintiff could not work a full 8-hour work day is inconsistent with his findings during multiple examinations and the extreme restrictions are not supported by other reports in the record. The ALJ referred to Dr. DiGeronimo's record of his physical examination of Plaintiff on 12/14/2009, the 5/18/2010 follow-up and the 6/21/2010 report that Plaintiff's coordination was normal with the exception of impaired balance.

The ALJ noted that Dr. DiGeronimo's opinion is not supported by the findings of other examining physicians. The ALJ referred to Dr. Ayer-Cole's examination of Plaintiff on 6/17/2010, which indicates that Plaintiff was alert and oriented, that Plaintiff demonstrated normal posture and motor behavior, that Plaintiff's cardiovascular examination was normal and Plaintiff's musculoskeletal examination was normal with no redness, swelling, tenderness or deformities. Dr. Ayer-Cole reported that Plaintiff had a normal range of motion. Dr. Ayer-Cole stated that Plaintiff had possible monoclonal gammopathy and multiple unexplained symptoms (Dkt. 13-8, p. 36). The ALJ found that the medical evidence as a whole does not substantiate Dr. DiGeronimo's opinion, and therefore accorded little weight to the opinion of Dr.

Case No. 8:12-CV-2811-T-17DNF

DiGeronimo that Plaintiff could not work a full eight hour day.  The ALJ accorded
significant weight to the findings of Dr. Ayer-Cole because the findings are consistent
with the medical evidence of record as a whole.   Dr. Ayer-Cole found that upon
examination, the following  were normal: Constitutional, Neck, Respiratory,
Cardiovascular, Gastrointestinal, Lymphatic, Musculoskeletal (Dkt. 13-8, pp. 28-29; pp.
31-32; pp. 35-36).

The ALJ further considered the March 9, 2010 opinion of Glen Turner, A.R.N.P.
(RFC)(Dkt. 13-8, pp. 25-26), but noted that Glen Turner is not an acceptable medical
source, and the assessment is not consistent with the findings made during clinical
examination, and not consistent with the findings throughout the evidence.

The ALJ further considered the determination of State Agency Disability experts
based on their review of the evidence in the record.  (Dkt. 13-7, pp. 129-136; Dkt. 13-8,
pp. 16-24).   The RFC Assessment of Dr. Minal Krishnamurthy is dated 9/28/2009; the
RFC Assessment of Dr. Robert Steele is dated 11/23/2009.  Both RFC Assessments
state that there was no other medical source statement regarding Plaintiff's physical
capacities in file.  The ALJ found the opinions generally persuasive, but made some
adjustments in light of the evidence of record considered in its entirety.

A. Analysis

1. Weight Accorded to Medical Opinion of Dr. DiGeronimo

A treating physician's opinion will be granted controlling weight if it is consistent
with other medical evidence and is well-supported by acceptable clinical and diagnostic
techniques.  20 C.F.R. § 404.1527(d)(2).   Where some medical evidence is found to
be inconsistent with the treating physician's opinion, the ALJ should give that opinion
"substantial or considerable" weight unless "good cause" is shown to the contrary.

Case No. 8:12-CV-2811-T-17DNF

Lewis v. Callahan, 125 F.3d 1436, 1140 (11th Cir. 1997).  The Eleventh Circuit has found "good cause" to exist where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records.  Wright v. Barnhart 153 Fed. App'x 678, 684 (11th Cir. 2005).   If the ALJ grants less than substantial or considerable weight to a treating physician, the ALJ  must clearly articulate the reasons for doing so.  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).


In this case, the ALJ clearly identified the inconsistencies which establish good cause to discount the opinion of Dr. DiGeronimo as to the extent of Plaintiff's limitations due to neuropathy.

2.  Weight Accorded to Findings of Dr. Ayer-Cole

Dr. Ayer-Cole is an examining physician.  Dr. Ayer-Cole was consulted to perform further tests to determine the cause of the abnormality revealed in a laboratory test.  The ALJ accorded significant weight to the underlying clinical findings of Dr. Ayer-Cole; upon examination, Dr. Ayer-Cole found Plaintiff's systems to be normal.

Dr. Ayer-Cole did not provide any opinion as to Plaintiff's limitations associated with the laboratory test results obtained.  However, the absence of a treating or examining physician's opinion does not preclude the ALJ from making a proper RFC determination.  Green v. Social Sec. Admin., 223 Fed. Appx. 915, 923-24 (11th Cir. 2007).

In determining Plaintiff's RFC, the ALJ must determine if Plaintiff is limited to a particular work level.  The ALJ looked to the opinions of Dr. Krishnamurthy and Dr. Steele in his RFC assessment.    If the ALJ articulates good cause for discrediting the

Case No. 8:12-CV-2811-T-17DNF

treating and examining physicians' opinions, an ALJ is entitled to rely on a
non-examining physician's opinion when it is consistent with the medical record and the
treating and examining physicians' underlying clinical findings. <u>Flowers v. Comm'r of
Social Security</u>, 441 F. App'x 735, 742–43 (11th Cir.2011) (per curiam) (unpublished).
While the opinions of the non-examiners standing alone are not substantial evidence, in
this case those opinions are consistent with the underlying clinical findings of Plaintiff's
treating and examining physicians.   The Court notes that the ALJ's RFC assessment is
more restrictive than the findings of the non-examining physicians; the ALJ considered
all of the other record evidence and took it into account in determining Plaintiff's RFC.
This case is distinguishable from <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226, n.3 (11th Cir.
1990).

3. Evaluation Under 20 C.F.R. Sec. 416.927(c)(2)

        20 C.F.R. Sec. 416.927 (c)(2) provides that the Court must consider certain
factors when evaluating medical opinions.  Plaintiff contends the ALJ erred in citing only
factors related to consistency and supportability, and in not considering Dr.
DiGeronimo's specialty, or the extent and nature of  the treating relationship.   Courts
have held that when an ALJ rejects or accords little weight to a treating specialist's
opinion, the  ALJ is required to consider and discuss each of the Sec. 416.927(c)(2)
factors. <u>Newton v. Apfel</u>, 209 F.3d 448, 456 (5th Cir.2000) (citing cases); <u>Russ v.
Astrue</u>, 2009 WL 764516 *9 (M.D. Fla. 3/20/2009).

        The Court may not reverse and remand for failure to comply with a regulation
without first considering whether the error was harmless.  Reversal and remand for
failure to comply is appropriate when the complainant affirmatively demonstrates
prejudice. <u>Hall v. Schweiker</u>, 660 F.2d 116, 119 (5th Cir. 1981).

        Dr. DiGeronimo's specialization, length of treatment relationship and frequency

21

Case 8:12-cv-02811-EAK-DNF   Document 22   Filed 03/21/14   Page 22 of 25 PageID 695

Case No. 8:12-CV-2811-T-17DNF

of examination, and nature and extent of treatment relationship do not explain the inconsistencies between Dr. DiGeronimo's treatment records and the opinions expressed in the RFC Questionnaire.   Assuming that the ALJ was in error in not expressly addressing each of the factors, given the scope of the inconsistencies between the limitations set by Dr. DiGeronimo and Dr. DiGeronimo's own findings during multiple physical examinations, and given that other evidence in the record does not support such restrictions, Plaintiff has not demonstrated prejudice that would require remand.

4.  Selective Evaluation

Plaintiff contends the ALJ erred in selectively picking examination evidence that favors a finding of non-disability, citing <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1548 (11th Cir. 1996)(reversing decision denying benefits where agency improperly focused on one aspect of evidence and ignored objective medical evidence of claimant's physical condition and testimony of vocational expert; emphasizing review must take into account and evaluate record as a whole).

In this case, the ALJ determined that Plaintiff has severe impairments, but still has the residual functional capacity to perform a range of sedentary work, with some restrictions.   In reaching this RFC assessment, the ALJ necessarily rejected the opinion of Dr. DiGeronimo that Plaintiff is unable to work an 8-hour day.   The issue of determining residual functional capacity is reserved to the Commissioner, and delegated to the ALJ.  This assessment requires the ALJ to consider the record as a whole and to resolve conflicts in the evidence.   The ALJ is not required to discuss every piece of evidence.   <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005).   Plaintiff's medical history is somewhat involved, and there is a considerable amount of medical evidence.   The ALJ's review of the evidence shows the discrepancies and how the ALJ

22

Case No. 8:12-CV-2811-T-17DNF

resolved them.  The Court has found that the ALJ had good cause to discount the
opinion of Dr. DiGeronimo.   The ALJ did not ignore Dr. DiGeronimo's diagnosis that
Plaintiff has neuropathy and that this severe impairment limits Plaintiff's functional
capacity; based on the evidence as a whole, the ALJ determined that the limitations on
Plaintiff's functional capacity were not as severe as Dr. DiGeronimo believed them to
be.      In this context, severity of an impairment is measured "in terms of its effect upon
ability to work, and not simply in terms of deviation from purely medical standards of
bodily perfection or normality."   McCruter v. Bowen, 791 F.2d 1544, 1547 (11th
Cir.1986).


     After consideration, the Court overrules Plaintiff's Objection to weight accorded
to the opinion of Dr. DiGeronimo.

B.   Ability to Perform Range of Sedentary Work
     ALJ's Step Five Determination

     Plaintiff objects that the testimony of the Vocational Expert was in response to an
incomplete hypothetical question, and therefore the ALJ's reliance on that testimony to
find that Plaintiff was not disabled was erroneous.  Plaintiff argues that the hypothetical
did not contain many of the limitations found by Dr. DiGeronimo, and this matter should
be remanded for further proceedings

     At Step Four, the ALJ found that Plaintiff was unable to perform past relevant
work.  Therefore, at Step Five, the ALJ was required to determine whether there are
jobs that exist in the national economy that Plaintiff can perform, considering Plaintiff's
age, education, work experience and residual functional capacity.

     Plaintiff argues that the hypothetical posed to the VE was incomplete because it
did not include the limitations opined by Dr. DiGeronimo, such as the very limited use of

Case No. 8:12-CV-2811-T-17DNF

Plaintiff's upper extremities, the need to take unscheduled breaks, and the need for
more breaks than 15 minutes in the a.m. and p.m. and a 30-minute break for lunch.  At
the hearing, Plaintiff testified that Plaintiff sits in a recliner most of the day, with her feet
elevated to avoid swelling (Dkt. 13-2, p. 56); this limitation was not included in the
hypothetical posed to the VE.

One way in which an ALJ may determine that a claimant is able to perform other
jobs is by posing a hypothetical question to a Vocational Expert that comprises all of the
claimant's impairments.   Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).
The hypothetical need not include any symptom alleged by a claimant that is not
supported by medical evidence.  Ingram v. Commissioner of Social Security, 496 F.3d
1253, 1270 (11th Cir. 2007)(hypothetical need only include claimant's impairments, not
each and every symptom of claimant).  The ALJ included the following parameters in
the hypothetical posed to the VE:  Claimant's age, education, work experience, can lift
up to ten lbs. Occasionally, stand or walk approximately two hours per eight-hour work
day, sit for approximately six hours per eight-hour work day with normal breaks, never
climb ladders, ropes or scaffolds, occasional as to all other postural limitations,
including climbing of ramps or stairs, balancing, stooping, crouching, kneeling and
crawling, avoid concentrated exposure to irritants such as fumes, odors, dust an d
gases, avoid concentrated exposure to extreme cold and heat (Dkt. 13-2, p. 63).  In the
second hypothetical, the ALJ included a sit/stand option at will (Dkt. 13-2, p. 64).  The
Court found good cause for the ALJ to discount the weight accorded to the opinion of
Dr. DiGeronimo; the hypothetical posed to the VE was not incomplete where the clinical
findings of the treating physician did not support the limitations the treating physician
included in his RFC Questionnaire.  Plaintiff's alleged need to constantly elevate her
feet to avoid swelling is not supported by the medical evidence.

After consideration, the Court overrules Plaintiff's Objection to the Report and
Recommendation as to the hypothetical posed to the VE.  The Court adopts the Report

24

Case No. 8:12-CV-2811-T-17DNF

and Recommendation.  Accordingly, it is

ORDERED that Plaintiff's Objection is **overruled**; the Report and Recommendation is **adopted** and incorporated herein by reference.  The decision of the Commissioner of Social Security Plaintiff's claim for Supplemental Security Income is **affirmed**.  The Clerk of Court shall enter a final judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Rachel Lynn Davis, and close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 2/5 day of March, 2014.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

25